IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PERDUE FARMS INCORPORATED et al. | * | |
| Plaintiffs, | * | |
| vs. | * | Civil No. 19-1550-SAG |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA | * | |
| Defendant. | * | |

## **MEMORANDUM OPINION**

### **INTRODUCTION**

On February 3, 2020, this declaratory judgment, breach of contract action was referred to me for all discovery and related scheduling (ECF 26). The issue now pending is a motion to compel certain discovery filed by Defendant (ECF 25). In short, Defendant complains that it is entitled to discovery from Plaintiffs including documents and information related to the two underlying Anti-Trust actions to determine whether the two claims pending are inter-related claims and thus only covered by the 2016 policy or whether they are separate claims, each covered under two separate policies, the 2016 policy and a second policy issued in 2017. In objecting to discovery, Plaintiffs rely upon caselaw regarding dispositive motions in declaratory judgment actions. The Court agrees with Defendant that there is a distinction between discovery issues and evaluating dispositive motions in the context of declaratory judgment actions and the analysis is not quite so simple.

The Court has reviewed the Motion and subsequent filings (ECF 25). No hearing is necessary. Local Rule 105.6. For the reasons stated herein, the Motion to Compel is GRANTED as set forth below.

## FACTS

Perdue Farms, Inc., and Perdue Foods, LLC, (collectively "Perdue") are growers and sellers of chickens and are located in Salisbury, Maryland. (All facts are taken from Plaintiffs' Complaint, ECF-1). Perdue obtained an insurance policy from Defendant National Union in 2016 with a sublimit for anti-trust claims of $15,000,000.00. Perdue obtained a subsequent policy in 2017 from Defendant with the same conditions and coverage. During the term of the 2016 policy, Perdue was sued in the United States District Court for the Northern District of Illinois by commercial and consumer purchasers of "broilers" (chicken raised for consumption) for violations of the Sherman Act and other related anti-trust state law claims. Perdue promptly reported the claim to Defendant and Defendant agreed to indemnify Perdue under the 2016 policy.

In 2017, various "growers" that raise chickens for Perdue filed a separate set of actions in the United States District Court for the Eastern District of Oklahoma. The complaint alleged violations of the Sherman Act and other anti-trust allegations. Perdue promptly reported the claim to National Union under the 2017 policy since the lawsuit was filed during the effective dates of the 2017 policy. National Union reviewed the allegations in the 2017 complaint and denied coverage under the 2017 policy, stating that the facts arose from the same facts as the 2016 complaint and therefore the claims were related and coverage for both claims was limited to the 2016 policy. Plaintiffs filed this declaratory judgment and breach of contract action in the Circuit Court for Wicomico County, Maryland and Defendant removed this matter here to the United States District Court for the District of Maryland.

## ANALYSIS

The first step for the Court is to look at the complaint in order to determine the scope of discovery. Count One requests the Court provide a Declaratory Judgment finding that Plaintiffs

second action, the "Growers" action is covered under the 2017 policy because it is not inter-related to the 2016 "Broilers" action. Count Two alleges a breach of contract action. Both counts rely upon the pertinent language of the insurance contract. There is no dispute that both policies cover anti-trust actions. The dispute lies in the exclusion language that excludes coverage if the claim is related to a claim for which notice has been given under a prior policy.

> (d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Related Wrongful Act(s) alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any directors or officers liability policy of which this D&O Coverage Section is a renewal or replacement of in whole or in part or which it may succeed in time. ECF 1-3.

The 2017 Policy defines Related Wrongful Act(s) as "Wrongful Act(s) which are the same, related , or continuous or Wrongful Acts which arise from a common nucleus of facts. Claims can allege Wrongful Act(s) regardless of whether such Claims involve the same or different claimants, insureds, or legal causes of action". ECF 1-3.

In Maryland, when interpreting a contract, courts "seek to ascertain and effectuate the intention of the contracting parties." *Phoenix Services Ltd. Partnership v. Johns Hopkins Hosp.*, 167 Md.App. 327, 392 (2006). In ascertaining the parties' intent, Maryland adheres to the objective theory of contract interpretation. *See Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51 (2013). The objective theory of contract interpretation requires that a court "must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Myers v.*

*Kayhoe*, 391 Md. 188, 198 (2006) (quoting *Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656–57, 890 A.2d 737 (2006)).

The process for determining the intent of the contracting parties is well established in Maryland. First, a court must ascertain whether the agreement is ambiguous. Language in a contract "may be ambiguous if it is 'general' and may suggest two meanings to a reasonably prudent layperson." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 389 (1985). However, a contract is not ambiguous merely because the parties disagree as to its meaning. *See Fultz v. Shaffer*, 111 Md.App. 278, 299 (1996). Contracts are interpreted as a whole, and all disputed terms are to be interpreted in context. *See Phoenix Services*, 167 Md.App. at 392–93. A court's next step depends on whether it finds that the contract is ambiguous or unambiguous.

If it finds that a contract is unambiguous, then it must only look to the language of the contract to determine the intent of the parties. *See Phoenix Services*, 167 Md.App. at 392. A court must presume that the terms expressed in the agreement are what the parties intended, regardless of what the parties may have meant, but did not state in the contract. *Id.* When contract language is clear and unambiguous, there is no room for construction and courts may not consider what the parties thought the agreement meant. *See General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, (1985). *See also Phoenix Services*, 167 Md.App. at 392. If, on the other hand, a court finds that the contract is ambiguous, it must follow the second alternative, which is considering parol and/or extrinsic evidence to determine the parties' intent when the contract was made. *Id.* at 393.

In this case, it is not so much whether the language is unambiguous. There is no ambiguity in the language set forth above. The causes of action alleged in the complaint become a factor in determining relevancy and proportionality when the Court is weighing disclosure. The issue before

the Court is whether the Defendant is limited in discovery to the pleadings of the underlying actions and what discovery has been provided, in order to determine whether the exclusion clause applies. Put more simply, is the Defendant entitled to facts regarding the relation between the Growers actions and the Broilers actions, those facts consisting of materials in the hands of Plaintiffs. The exclusion clause itself calls for an analysis of facts in order to determine whether the second action arose from or is inter-related to the first action and thus restricted to coverage under the 2016 policy.

The parties have been somewhat successful in narrowing the dispute. Defendant now only seeks (1) Discovery responses and documents produced by Perdue and defendant Agri Stats in the underlying Broiler actions and Grower actions (2) All deposition transcripts and exhibits in the Broiler Actions and Grower Actions (3) A 30(b)(6) deposition of Perdue's designee and any fact witness(es) whose deposition(s) are rendered necessary by the discovery items above. ECF 25

Rule 26(b)(1) provides that:

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1).

District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 683 (4th Cir.1986); *Middleton v. Nissan Motor Co.*, No. 10–2529, 2012 WL 3612572, at *2 (D.S.C. Aug. 21, 2012). The latitude given to district courts "extends as well to the manner

in which [they] order the course and scope of discovery." *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 683 (4th Cir. 1996).

I find that while the contract is unambiguous, it necessarily calls for an analysis of the facts to determine whether the Growers Actions and the Broilers Actions are inter-related. Defendant is entitled to discovery of those facts in order to defend this claim. The information sought is not only important to the defense of this declaratory judgment action, it is critical. The information requested is already in the possession of Plaintiffs and therefore, while there is always a burden to produce documents, it is not overly burdensome to produce a copy of what already exists. Any information that exists under a confidentiality agreement shall remain under the confidentiality agreement and Defendant will be bound by the terms of the agreement as well. Plaintiffs are still free to assert any privileges that may apply to the requested information.

With respect to the deposition of the Rule 30(b)(6) witness, Defendant timely requested the designation within the discovery period. The Court finds Plaintiffs argument unpersuasive with respect to the timing of Defendant's request. Plaintiffs are to provide a designee promptly and no later than within 14 days of this Order. The parties are to select a mutually agreeable date for the deposition and the discovery deadline is extended solely for the purpose of obtaining the deposition of Plaintiffs' designated Rule 30(b)(6) witness. If additional depositions are requested by Defendant, the parties are to submit a status report including any requested extension of the discovery deadline and scheduling order to the Court for approval. The parties are encouraged to work together to resolve any remaining issues.

A separate Order will follow.

Date: 21 February 2020

A. David Copperthite
United States Magistrate Judge